No. 22-70005

―――――――――――――――

**In the
United States Court of Appeals
for the Fifth Circuit**

―――――――――――――――

MATTHEW JOHNSON,
*Petitioner-Appellant*

v.

BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent-Appellee*

―――――――――――――――

On Appeal from the United States District Court for the Northern
District of Texas, Dallas Division, Civ. Action No. 3:19-cv-2310

―――――――――――――――

**PETITION FOR REHEARING EN BANC**

―――――――――――――――

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

*Counsel to Matthew Johnson, Petitioner-Appellant*
August 1, 2023

**THIS IS A CAPITAL CASE**

# Certificate of Interested Persons

MATTHEW JOHNSON,
                    *Petitioner-Appellant*,

                    v.

BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
                    *Respondent-Appellee.*

The undersigned counsel of record certifies that the following

listed persons and entities as described by Fifth Circuit Rule 28.2.1

have an interest in the outcome of this case. These representations are

made in order that the judges of this Court may evaluate possible

disqualification or recusal.

1. **Petitioner-Appellant:**
   Matthew Johnson
   TDCJ-ID (Death Row)
   Livingston, Texas

2. **Counsel for Petitioner-Appellant:**
   David R. Dow
   Jeffrey R. Newberry
   University of Houston Law Center
   Houston, Texas

3. **Respondent-Appellee:**
   Bobby Lumpkin
   Director, Texas Department of Criminal Justice,
   Institutional Division
   Huntsville, Texas

4.    **Counsel for Respondent-Appellee:**
      Tomee Morgan Heining
      Office of the Texas Attorney General


/s/ David R. Dow

_____

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
*Counsel to Matthew Johnson,*
*Petitioner-Appellant*

**Statement Pursuant to**
**Federal Rule of Appellate Procedure 35(b)(1)**

A rehearing en banc is warranted under Rule 35 because the basis of the Panel's decision—i.e., that a district court's authority to control its docket allows it to require a federal habeas petitioner file his petition in less time than the period afforded by 28 U.S.C. § 2244(d)—conflicts not only with federal statutory law but also with a decision of the Supreme Court. In addition, the Panel's decision is in conflict with the opinions of other United States Courts of Appeals that have considered the issue.

Specifically, in *Dietz v. Bouldin*, 579 U.S. 40 (2016), the Supreme Court held that a district court's inherent power to control its docket is subject to statutory limitations that restrict the district court's power. *Dietz*, 579 U.S. at 45-46. The statutory provision relevant in this case is 28 U.S.C. § 2244(d), which provides (*inter alia*) that a "1-year period of limitation *shall apply* to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1) (emphasis added). The word "shall" signals a mandatory command. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 225 (5th Cir. 2022). As such, the statute places a limit on the district

iv

court's inherent power to control its docket insofar as federal law grants a habeas petitioner a full year to file his petition. This plain reading of federal statutory law accords with decisions of other U.S. Courts of Appeals that have addressed the issue. *See Grant v. Swarthout*, 862 F.3d 914, 919 (9th Cir. 2017); *Valverde v. Stinson*, 224 F.3d 129, 135-36 (2d Cir. 2000); *cf. United States v. Gabaldon*, 522 F.3d 1121, 1126 (10th Cir. 2008).

Moreover, the necessary implication of the Panel's decision is that it would allow district courts to treat indigent petitioners differently from their non-indigent counterparts. This disparate treatment on the basis of a habeas petitioner's wealth violates the Fourteenth Amendment's Equal Protection Clause. *Griffin v. Illinois*, 351 U.S. 12, 17-19 (1956).

Accordingly, consideration by the full court is necessary to correct these significant errors in the Panel's opinion.

# Table of Contents

Certificate of Interested Persons ............................................. ii

Statement Pursuant to Federal Rule of Appellate Procedure 35(b)(1) ...................................................................... iv

Table of Contents ..................................................... vi

Table of Authorities ............................................. viii

Statement of the Issues for En Banc Consideration ............................... 1

Statement of the Course of Proceedings and Disposition of the Case ............................................................... 2

Statement of Facts Relevant to En Banc Consideration ......................... 4

Argument ........................................................... 8

I.    The Panel's ruling that the district court could deny Johnson the full statutory filing period for his federal habeas application pursuant to its inherent power to control its docket was wrong and puts this Court at odds with the Congressional mandate as well as the other Courts of Appeals which have considered this issue. ...................................... 8

II.   The Panel's decision conflicts with the Fifth and Fourteenth Amendments, because allowing a district court to require a habeas petitioner to file his petition before the final day of the limitations period runs afoul of the petitioner's rights to equal protection and due process .................................. 14

Conclusion .......................................................... 16

Certificates of Service and Compliance with ECF Filing Standards ..... 17

Certificate of Compliance with Rule 35(b)(2) ........................ 17

Appendix A:      *Johnson v. Lumpkin*, No. 22-70005 (5th Cir. July 18, 2023).

# Table of Authorities

## Cases

*Acosta v. Artuz,*
    221 F.3d 117 (2d Cir. 2000) ........................................................ 10

*Day v. McDonough,*
    547 U.S. 198 (2006) .................................................................... 10

*Degen v. United States,*
    517 U.S. 820 (1996) .................................................................... 11

*Dietz v. Bouldin,*
    579 U.S. 40 (2016) ........................................................... iv, 10, 13

*Grant v. Swarthout,*
    862 F.3d 914 (9th Cir. 2017) .................................................. v, 9-10

*Griffin v. Illinois,*
    351 U.S. 12 (1956) ................................................................. v, 15

*Hamilton v. Wal-Mart Stores, Inc.,*
    39 F.4th 575 (9th Cir. 2022) ....................................................... 11

*Holland v. Florida,*
    560 U.S. 631 (2010) .................................................................... 11

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods, LLC,*
    580 U.S. 328 (2017) ...................................................................... 9

*Texas v. United States,*
    40 F.4th 205 (5th Cir. 2022) ........................................................ iv

*United States v. Gabaldon,*
    522 F.3d 1121 (10th Cir. 2008) .................................................. v, 9

*Valverde v. Stinson,*
    224 F.3d 129 (2d Cir. 2000) ..........................................................v, 9

## Statutes and Rules

28 U.S.C. § 2244(d) ........................................................................iv, 5, 8, 11

No. 22-70005

———————————————

**In the
United States Court of Appeals
for the Fifth Circuit**

———————————————

MATTHEW JOHNSON,
*Petitioner-Appellant*

v.

BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent-Appellee*

———————————————

On Appeal from the United States District Court for the Northern
District of Texas, Dallas Division, Civ. Action No. 3:19-cv-2310

———————————————

**PETITION FOR REHEARING EN BANC**

———————————————

**Statement of the Issues for En Banc Consideration**

The Panel's decision (attached as Appendix A) raises two issues of

exceptional importance:

1. Does a district court's inherent authority to control its docket

allow it to ignore mandatory statutory language and require

a federal habeas petitioner to file his petition before the one

year for filing he is entitled to under federal law?

2.    Does a district court's inherent authority to control its docket
      allow it to treat an indigent habeas petitioner differently
      from non-indigent petitioners by requiring the indigent
      petitioner to file his federal habeas petition in less than the
      one year allowed for by statute when the court would have
      no authority to require the same of a non-indigent
      petitioner?

### Statement of the Course of Proceedings and Disposition of the Case

Matthew Johnson was convicted of capital murder in October 2013 and sentenced to death in November 2013. ROA.2588; ROA.2594-95; ROA.2602; ROA.10260; ROA.11353-54. The Texas Court of Criminal Appeals (CCA) affirmed his conviction and sentence on November 18, 2015. ROA.1529. The Supreme Court of the United States denied Johnson's petition for a writ of certiorari on June 27, 2016, which is the date his conviction became final. ROA.1535.

Before his conviction became final, Johnson properly filed an application for state habeas corpus relief on May 28, 2015, while his direct appeal was pending. ROA.12404-926. On September 11, 2019, the

CCA denied Johnson relief in his state habeas proceeding. ROA.17933-39.

Through state habeas counsel, Johnson promptly filed a motion in the district court requesting the appointment of federal habeas counsel on September 27, 2019. ROA.10. On October 23, 2019, the district court appointed undersigned Counsel to represent Johnson. ROA.25-26. In the same order, the court ordered Johnson to file his petition for a writ of habeas corpus on or before May 1, 2020. ROA.26.

After Counsel filed two separate motions on April 6, 2020, and June 11, 2020, requesting that the district court order that Johnson's habeas petition be filed on September 11, 2020, the district court finally agreed Johnson could take the entire time afforded him by 28 U.S.C. § 2244 to prepare and file his habeas petition. ROA.51-89. Johnson timely filed his Petition for a Writ of Habeas Corpus on September 11, 2020. ROA.90. On February 8, 2022, Counsel filed an Amended Unopposed Motion to Recuse the United States District Court Judge, arguing, *inter alia*, that the district court's initial refusal to afford Johnson the full year provided by Congress to file his petition suggested that the district court harbored animus against him. ROA.709-33. Notably, the Attorney

General representing the Respondent did not oppose Petitioner's recusal motion. ROA.733.

On March 23, 2022, the district court entered a Memorandum Opinion and Order, denying the recusal motion, denying Johnson's relief on the claims raised in his petition, and denying Johnson a certificate of appealability. ROA.734-815.

Counsel filed Johnson's Appeal of Denial of Motion to Recuse and Application for Certificate of Appealability in this Court on June 7, 2022. The Panel issued its opinion, denying the application for a COA and affirming the district court's decision on the recusal motion, on July 18, 2023. Johnson now files this Petition for Rehearing En Banc because the Panel's decision conflicts with federal statutory law and binding Supreme Court precedent, and abridges Johnson's right to equal protection guaranteed by the Fourteenth Amendment.

**Statement of Facts Relevant to En Banc Consideration**

Because on June 27, 2016, (the date Johnson's conviction became final) Johnson's properly filed state habeas application was pending, the one-year statute of limitations provided by federal law for filing his federal habeas petition did not begin to run at that time; instead, the

statute began to run on September 11, 2019—the day the state court denied post-conviction relief. *See* 28 U.S.C. § 2244(d)(1)(A), (2).

After Johnson, through state habeas counsel, filed a motion in the district court requesting the appointment of federal habeas counsel on September 27, 2019, the district court took no immediate action. ROA.10. In fact, the court did not appoint Counsel to represent Johnson until October 23, 2019—almost four weeks after he filed a motion requesting the appointment of counsel and over a month after he had been denied relief in the state court. ROA.25-26.

In the same order in which the district court appointed the undersigned to represent Johnson, and in contravention of federal statutory law, the court ordered Johnson to file his petition for a writ of habeas corpus on or before May 1, 2020. ROA.28. This deadline, coming only six months after the Court appointed Counsel to represent Johnson, was four-and-a-half months earlier than the applicable deadline established by 28 U.S.C. § 2244.

Both because of the constraints caused by the COVID-19 pandemic and their belief that requiring Johnson to file his petition before the final day of the limitations period would violate his rights to

equal protection and due process, on April 6, 2020, Counsel filed a motion that asked the court to order that Johnson's habeas petition be filed on September 11, 2020—the date established by federal law. ROA.51-63.

Nevertheless, the district court again refused to give Johnson the entire one-year period to which he was entitled by federal statute and, on April 23, 2020, ordered Johnson to file his petition on or before July 1, 2020. ROA.68. On June 11, 2020, Counsel filed another motion requesting Johnson be afforded the entire year which Congress intended him to have to prepare and file his habeas petition. ROA.69. Finally, on June 17, 2020, the district court agreed Johnson could take the entire time afforded him by section 2244 to prepare and file his habeas petition. ROA.86. Johnson timely filed his Petition on September 11, 2020. ROA.90.

On February 8, 2022, believing the impartiality of the district court judge might reasonably be questioned, Counsel filed an Amended Unopposed Motion to Recuse the United States District Court Judge. ROA.709. As the unopposed motion argued, Counsel believed the district court's refusal to afford Johnson the full one-year period

provided by Congress suggested that the district court harbored animus toward Johnson before ruling on the merits of the claims raised in his petition. ROA.721-24.

On March 23, 2022, the district court entered its order denying the recusal motion, denying Johnson's relief on the claims raised in his petition, and denying a certificate of appealability. ROA.734. In its order, the district court indicated it believes that a "federal habeas petitioner possesses no right to wait until the very last day of the applicable one-year statute of limitations before filing his initial federal habeas petition." ROA.735. Perplexingly, notwithstanding the plain language of the congressionally enacted statute, the district court indicated it believes that giving habeas petitioners the full year to develop their claims "would be inconsistent with the congressional intent underlying" the passage of AEDPA. *Id.*

The Fifth Circuit Panel subsequently denied Johnson's application for a certificate of appealability and affirmed the district court's decision denying Johnson's motion to recuse. In addressing Counsel's argument that Johnson had been entitled to use up to a full year to submit his federal habeas petition, the Panel found that "Johnson cited no

governing legal authority recognizing the right to delay his briefing until the final day of AEDPA's one-year statute of limitations." Appendix A at 11. Instead, relying solely on the Supreme Court's decision in *Dietz v. Bouldin*, 579 U.S. 40 (2016), the Panel held that a district court need not allow a federal habeas petitioner the full year provided by § 2244(d) because a district court has the inherent authority to manage its docket with a view toward the efficient and expedient resolution of cases. *Id*.

## Argument

**I.    The Panel's ruling that the district court could deny Johnson the full statutory filing period for his federal habeas application pursuant to its inherent power to control its docket was wrong and puts this Court at odds with the Congressional mandate as well as the other Courts of Appeals which have considered this issue.**

In § 2244(d), Congress established a one-year statute of limitations that "*shall apply* to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d) (emphasis added). As the Supreme Court has made clear, the enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a hard and fast rule rather than a case-specific

judicial determination. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35 (2017). The statute reflects Congress's belief as to the appropriate balance between a state's interest in the finality of convictions, and a state prisoner's right to raise constitutional challenges to the state criminal proceeding in federal proceedings.

Other U.S. Courts of Appeals have expressly acknowledged the balance Congress struck. In view of this balance and the statute's use of mandatory language, "it is therefore inherently reasonable for a petitioner to rely on that statute of limitations and to plan on filing at any point within that period." *Grant v. Swarthout*, 862 F.3d 914, 919 (9th Cir. 2017); *see also Valverde v. Stinson*, 224 F.3d 129, 135–36 (2d Cir. 2000) (holding that a habeas petitioner would have acted reasonably by filing his petition any time during the applicable one-year period of limitations); *cf. United States v. Gabaldon*, 522 F.3d 1121, 1126 (10th Cir. 2008) (holding the same when analyzing the one-year period of limitations for filing a habeas petition pursuant to § 2255). Therefore, a habeas petitioner is "entitled to use the full one-year

statute-of-limitations period for the filing of his . . . habeas petition[]."
*Grant*, 862 F.3d at 919.

At the same time, courts have also recognized that this period of
limitation "promotes judicial efficiency and conservation of judicial
resources." *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000); *see also*
*Day v. McDonough*, 547 U.S. 198, 205-06 (2006) (recognizing § 2244(d)
implicates values beyond the concerns of the parties, such as judicial
efficiency).

The Panel's opinion in this case treats the district court's inherent
authority over its docket as sufficiently potent to empower it to
disregard mandatory language in federal statutory law. This view of a
district court's power contradicts that Supreme Court's understanding
that the exercise of a district court's inherent power is subject to limits;
these limits include that action taken by the district court: (1) must be a
reasonable response to a specific problem and (2) cannot contradict any
express rule or statute that limits the district court's power. *Dietz*, 579
U.S. at 45-46. These limits on a court's authority are critical, for there is
a danger of overreaching when one branch of the Government, without
benefit of cooperation or correction from the others, undertakes to

define its own authority. *Degen v. United States*, 517 U.S. 820, 823 (1996); *see also Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 590 (9th Cir. 2022) (holding that a district court could not use its inherent powers to impose a manageability requirement when such a rule would be "inconsistent" with a statute's purpose and scheme).

As indicated above, Congress's enactment of a one-year statute of limitations for the filing of federal habeas petitions struck a balance between the states' interest in finality and a condemned prisoner's right to federal habeas review. In addition to establishing a statutory deadline for seeking habeas relief, which can lengthen only by showing an extraordinary basis for doing so, *see, e.g.*, *Holland v. Florida*, 560 U.S. 631 (2010), Congress has also respected the states' interest in finality in many other ways, including the codification of the requirement that habeas applicants present all available claims to the federal courts in one federal petition and severely curtailing the availability of subsequent petitions. *See* 28 U.S.C. § 2244(b). In short, Congress has enacted a statutory scheme that gives due weight to competing interests, including the states' interest in the finality of their

judgments, the promotion of judicial efficiency, and the conservation of judicial resources.

Section 2244(d) reflects congressional intent to create a hard and fast rule for the timeliness of federal habeas applications rather than to rely on case-specific judicial determination. Furthermore, Congress arrived at this rule through a process of carefully balancing multiple interests. However, the district court in this case ignored a congressional determination of timing reasonability, instead choosing to substitute its own determination. And the Panel, when given an opportunity to correct this error, held that a district court's inherent authority to control its docket extends to the point of allowing the court to ignore the statute.

Disregarding mandatory statutory language and congressional intent thereby frustrates AEDPA's goal of promoting judicial efficiency and conservation of judicial resources, because the specific rule given by Congress in § 2244(d) provides predictability and clarity to all federal habeas proceedings. By enacting one clear limitations period, Congress conserved judicial resources in the aggregate by removing the necessity for individual district courts to determine reasonable filing timelines on

a case-by-case basis. The Panel's ruling will allow other district courts to similarly ignore this congressional determination, increasing confusion and decreasing efficiency in federal habeas proceedings broadly.

In addition, besides departing from the statute's mandatory language and the holdings of the other courts of appeals that have addressed this issue, the Panel's decision is inconsistent with Supreme Court precedent regarding appropriate limits on a district court's inherent powers. In its opinion, the Panel relied on the Supreme Court's affirmation in *Dietz* that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Exhibit A at 11 (*quoting Dietz*, 579 U.S. at 47). However, the Panel entirely ignored that the Court delineated the limits placed on the exercise of such inherent powers only a few paragraphs earlier, and the Panel's decision did not otherwise recognize any limits whatsoever on a district court's inherent authority to manage its docket and courtroom. *See Dietz*, 579 U.S. at 45-46.

The Panel's ruling in this case ignores mandatory statutory language, is inconsistent with rulings of the other U.S. Courts of Appeals, and is at odds with the Supreme Court's ruling in *Dietz*. Thus, Johnson respectfully requests that the Court grant his Petition for Rehearing En Banc and resolve this conflict with federal law.

## II. The Panel's decision conflicts with the Fifth and Fourteenth Amendments, because allowing a district court to require a habeas petitioner to file his petition before the final day of the limitations period runs afoul of the petitioner's rights to equal protection and due process.

Absent the need for court-appointed counsel brought about by indigence, a federal habeas petitioner would be neither obligated nor expected to communicate with a federal district court at all prior to the filing of a federal habeas petition. Consequently, if a federal habeas petitioner is financially capable of retaining federal habeas counsel instead of having to ask the district court to appoint counsel to represent him, the only time limit by which such a prisoner would have to abide in filing a federal habeas petition would be the limitations period prescribed in § 2244(d).

Johnson, however, is indigent, and must therefore rely on court-appointed counsel. It is therefore due to his indigence that Johnson was

required to involve the district court in his preparations for filing a federal habeas petition. In seeking the appointment of counsel, however, Johnson did nothing to waive his right to take the same time to prepare his case for filing as a non-indigent petitioner would, or to subject himself to the imposition of deadlines which a federal district court would have no occasion to impose upon a prisoner who could afford his own lawyer. Under these circumstances, the district court treated Johnson differently solely on account of his indigency by requiring that he meet a filing deadline months in advance of the expiration of his limitations period. The action of holding an indigent prisoner to a different standard from that applicable to a non-indigent prisoner is incompatible with the mandates of due process and equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments. *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."). The Equal Protection and Due Process Clauses require Johnson not be treated differently on account of his indigence.

The Panel has created a rule that is incompatible with the Fifth and Fourteenth Amendments, because it permits district courts to treat indigent habeas petitioners differently from non-indigent petitioners.

## Conclusion

For the foregoing reasons, Petitioner-Appellant Matthew Johnson respectfully requests this Court grant his Petition for Rehearing En Banc and hold that a district court cannot prohibit a federal habeas petitioner from submitting his petition at any point within the period provided by § 2244(d).

Respectfully submitted,

s/ David R. Dow

_____

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

s/ Jeffrey R. Newberry

_____

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

*Counsel to Petitioner-Appellant, Matthew Johnson*

## Certificates of Service and Compliance with
## ECF Filing Standards

I certify that on July 31, 2023, the foregoing Petition for Rehearing *En Banc* was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Tomee Morgan Heining, Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tomee.Heining@oag.texas.gov

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

s/ David R. Dow

_____

David R. Dow

## Certificate of Compliance with Rule 35(b)(2)

This petition complies with Rule 35(b)(2) because it contains 3,358 words, excluding the items not counted under Rule 32(f). This petition was prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.75 in 14 point century schoolbook and 12 point century schoolbook for footnotes.

s/ David R. Dow

_____

David R. Dow

Appendix A

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 22-70005
_____

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2023

Lyle W. Cayce
Clerk

MATTHEW JOHNSON,

*Petitioner—Appellant,*

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2310

_____

Before ELROD, OLDHAM, and WILSON, *Circuit Judges.*

JENNIFER WALKER ELROD, *Circuit Judge*:

Appellant Matthew Johnson files an application for a certificate of appealability and appeals the district court's denial of his motion to recuse. We DENY the application for a certificate of appealability and AFFIRM the district court's denial of the motion to recuse.

I

The facts underlying Johnson's conviction are not in dispute. They were recorded on a store surveillance camera and played for the jury at

No. 22-70005

Johnson's capital murder trial.  In May 2012, Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk.  He then demanded money from Harris.  As Harris attempted to open the cash register, Johnson stole two cigarette lighters, two packages of cigarettes, and a ring from Harris's finger.

Once Harris opened the cash register, Johnson took the money and then set Harris on fire.  As Harris frantically attempted to extinguish herself, video recordings showed that Johnson "calmly" walked out of the store.  *Ex parte Johnson,* WR-87,574-01, 2019 WL 4317046, at *1 (Tex. Crim. App. Sept. 11, 2019).  Police officers arrived at the convenience store soon after and extinguished the flame.  Aided by descriptions given by Harris and neighborhood residents, the police quickly apprehended Johnson.  Because of the incident, Harris suffered second-to-fourth degree burns over 40% of her body.  She died five days later.

Johnson was indicted for intentionally causing the death of Harris by setting her on fire during a robbery.  The jury found him guilty of capital murder as alleged in the indictment.  At the punishment stage of his trial, the jury unanimously determined that: (1) Johnson presented future danger to society; and (2) there were insufficient mitigating circumstances to warrant a life imprisonment rather than a death sentence.  Accordingly, Johnson was sentenced to death. Tex. Code Crim. Pro. art. 37.071.  The Texas Court of Criminal Appeals affirmed his conviction and sentence, *Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *1 (Tex. Crim. App. Nov. 18, 2015), and the United States Supreme Court denied his petition for certiorari, *Johnson v. Texas*, 579 U.S. 931 (2016).  Johnson challenged the validity of his conviction and sentence in a state habeas proceeding, and the Texas Court of Criminal Appeals denied relief. *Ex parte Johnson*, 2019 WL 4317046, at *3.

Johnson then petitioned for habeas relief in federal district court. During the pendency of his federal habeas petition, Johnson filed a motion to recuse Judge Ada Brown, alleging that the decisions she made would cause a reasonable person to "harbor doubts about [her] impartiality." *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999) (citation and quotation marks omitted). The district court denied habeas relief, the motion to recuse, and the application for a certificate of appealability.

## II

Before this court, Johnson files an application for a certificate of appealability and appeals the district court denial of his motion to recuse.

## A

Under the Antiterrorism and Effective Death Penalty Act, a state court prisoner must obtain a certificate of appealability before appealing a federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). To obtain a certificate of appealability, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and quotation marks omitted). The determination "requires an overview of the claims in the habeas petition and a general assessment of their merits" but not "full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336; *see also Buck v. Davis*, 580 U.S. 100, 115 (2017).

As background, to render a death sentence under Texas law, the State has the burden to prove beyond a reasonable doubt that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071(2)(b)(1); *Druery v. Thaler*, 647 F.3d 535, 546 (5th Cir. 2011). If the jury finds future dangerousness, it must then consider whether there are suf-

ficient mitigating circumstances to warrant a sentence of life imprisonment rather than a death sentence. Tex. Code Crim. Proc. art. 37.071(2)(e)(1).

At the sentencing stage of Johnson's trial, several witnesses testified regarding Johnson's criminal history. A police officer and Johnson's ex-girlfriend testified about an incident in which Johnson attempted to break into an apartment where his girlfriend and her children were living. When he failed to break in, he set the back porch of the apartment on fire. Another woman testified about a separate incident where Johnson forced her out from her pickup truck, threw her to the ground, and drove off. And several police officers testified that Johnson has a history of aggravated assault, theft, and evading arrests. After deliberation, the jury answered "yes" to the future dangerousness question and "no" to the mitigation question. Thus, it sentenced Johnson to death.

In his habeas petition before the district court, Johnson challenged the constitutionality of Texas's future dangerousness and mitigation special issues. The district court rejected Johnson's constitutional challenges. Here, Johnson contends he is entitled to a certificate of appealability because reasonable jurists would debate the district court's determination that Texas's future dangerousness and mitigation issues are constitutional. We address each issue in turn.

1

As to future dangerousness, Johnson contends that he is entitled to habeas relief because: the Texas capital sentencing statute's future dangerousness provision is unconstitutionally vague; jury predictions of future dangerousness are inherently unreliable; and his jury was wrong when it predicted he would be violent in the future.

First, Johnson contends that Texas's capital sentencing statute is unconstitutionally vague because it fails to define "probability" and "criminal

acts of violence." Tex. Code Crim. Proc. art. 37.071(2)(b)(1). No reasonable jurist would debate the correctness of the district court's determination on this issue. *Buck*, 580 U.S. at 115–16. The Supreme Court has held that Texas's capital punishment scheme that asks "'whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society' is not unconstitutionally vague." *Tuilaepa v. California*, 512 U.S. 967, 974 (1994) (quoting *Jurek v. Texas*, 428 U.S. 262, 274–76 (1976)). Likewise, in *Woods v. Johnson*, this court applied the Supreme Court's holding in *Jurek* that "reject[ed] the contention that the [future dangerousness] issue is impermissibly vague." 75 F.3d 1017, 1034 (5th Cir. 1996). Since then, we have repeatedly re-affirmed the same holding. *See, e.g.*, *Sprouse v. Stephens*, 748 F.3d 609, 622 (5th Cir. 2014) ("Texas does not run afoul of [Supreme Court precedent] by not expressly defining these terms.") (citation omitted); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) (listing numerous Fifth Circuit opinions rejecting similar arguments).

Next, Johnson argues that jury prediction of future dangerousness is inherently unreliable, and so capital-punishment schemes that rely on such predictions are arbitrary and thus unconstitutional. Johnson contends that even though the Supreme Court explicitly upheld Texas's future dangerousness question in *Jurek* and *Barefoot*, the reasoning of those decisions "[has] been entirely eroded" in light of new social science research showing the inaccuracy of jury predictions. *Jurek*, 428 U.S. 262; *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 2253(c).

In *Jurek*, the Supreme Court observed that although determining future dangerousness is "difficult," it "does not mean that it cannot be [done]." *Jurek*, 428 U.S. at 274–75. Highlighting the prevalence of similar determinations, the Court noted that jury prediction of future dangerousness is "no different from the task performed countless times each day throughout the American system of criminal justice." *Id.* at 276. For example, the Court

observed that similar predictions are made when government officials decide whether to admit a defendant to bail or whether a prisoner should be released on parole. *Id.* at 275. Consequently, the Court rejected the petitioner's argument and held that "Texas' capital-sentencing procedures . . . do not violate the Eighth and Fourteenth Amendments." *Id.* at 276. As Johnson himself conceded, seven years later, the Supreme Court reaffirmed its holding in *Jurek* that Texas's future dangerousness issue does not violate the Eighth Amendment. *See Barefoot*, 463 U.S. at 899. Johnson contends, however, that the "factual and theoretical foundations" of *Jurek* and *Barefoot* "have been entirely eroded" by subsequent social science research, which demonstrated that jury predictions of future dangerousness are entirely unreliable.

But this argument is plainly foreclosed by our decision in *Buntion v. Lumpkin*, 982 F.3d 945 (5th Cir. 2020). In *Buntion*, we considered the same arguments on this issue that were made by the same lawyers. We addressed the argument that the Texas Code is "unconstitutional because several studies indicate that juries' dangerousness predictions usually prove untrue," and concluded that the argument was "substantively meritless" because "the Supreme Court has twice upheld the exact same provision." *Id.* at 948–50. Faced with unfavorable Supreme Court cases, Buntion (like Johnson) argued that new social science studies "entirely undermine[d] the factual predicate" underlying those cases, and so he invited the court to "ignore" those precedents. *Id.* at 950. The *Buntion* panel correctly refused to do so, noting that only the Supreme Court alone can overrule one of its precedents. *Id.* (citing *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). Given our holding in *Buntion* controls this issue, no "reasonable jurists would find the district court's assessment" on this issue "debatable or wrong." *Miller-El*, 537 U.S. at 338; *Buck*, 580 U.S. at 115–16.

Finally, Johnson argues that his sentence should be vacated because the jury was wrong when it predicted that he would be violent in the future.

He noted that he "has committed no violent acts while incarcerated," and "[h]is impeccable disciplinary record demonstrates that he poses no threat to guards or fellow inmates." As legal authority, he cites the Supreme Court case in *Johnson v. Mississippi* for the proposition that a death sentence should be vacated when it was "predicated, in part, on a . . . judgment that is not valid now, and was not valid when it was entered." 486 U.S. 578, 585 n.6 (1988). Because his sentence was predicated on the future dangerousness assessment, which he says has been proven wrong by his peaceful behavior in prison, he contends that his sentence should be vacated in accordance with *Johnson v. Mississippi*.

This argument is likewise not debatable for the same reasons seen in *Buntion. See Buck*, 580 U.S. at 115–16. Like Johnson, Buntion argued that his sentence should be vacated because *Johnson v. Mississippi* "stands for the proposition that any sentence based on a factual inaccuracy must be vacated" and his peaceful behavior in prison evinced that factual inaccuracy. *Buntion*, 982 F.3d at 950–51. We rejected that argument in *Buntion* for two independent reasons. First, we observed that the petitioner misinterpreted *Johnson v. Mississippi* because "'[t]he Supreme Court has never intimated that the factual correctness of the jury's prediction on the issue of future dangerousness . . . bears upon the constitutionality' of a death sentence." *Id.* (alterations in original) (quoting *Lincecum v. Collins*, 958 F.2d 1271, 1281 (5th Cir. 1992)). Second, we noted that the sentence imposed was not based on factual inaccuracy because the jury was not asked to determine whether Buntion "would in fact engage in future violence." *Id.* at 951. Rather, the jury was asked whether "there is a probability" that he would commit criminal acts of violence. *Id.* (quoting Tex. Code Crim. Proc. art. 37.0711 § 3(b)(2)). Consequently, "the fact that Buntion [] behaved peacefully while in prison did not disprove the jury's probability calculation." *Id.*

No. 22-70005

Even assuming *arguendo* that reasonable jurists could debate the merit of Johnson's argument, it is not debatable that the argument is barred by *Teague*'s non-retroactivity doctrine. *Teague v. Lane*, 489 U.S. 288 (1989). Under *Teague*, "a new rule of law [should] not be applied on collateral review to cases that became final prior to the announcement of the new rule." *Burdine v. Johnson*, 262 F.3d 336, 342 (5th Cir. 2001) (*en banc*) (citing *Teague*, 489 U.S. at 310). Here, Johnson is advocating for a new extension of *Johnson v. Mississippi*. As the district court observed, Johnson did not identify any courts that have adopted his broad reading of that case. To the contrary, controlling caselaw from the Fifth Circuit and the Supreme Court has rejected his argument and upheld the constitutionality of the Texas Code's future dangerousness provision.

Thus, given the multiple on-point precedents and *Teague*'s non-retroactivity bar, no reasonable jurists could debate the correctness of the district court's determination on this issue. *See Sprouse*, 748 F.3d at 609; *Buntion*, 982 F.3d 945; *Buck*, 580 U.S. at 115–16.

2

In addition to challenging the future dangerousness issue, Johnson also challenges the constitutionality of Texas's mitigation issue. Before imposing a death sentence, the Texas Code requires the jury to determine whether there were sufficient mitigating circumstances to warrant lowering the punishment to a life sentence. Johnson contends that Texas's failure to impose the burden of proof on the State to show that there were insufficient mitigating circumstances beyond a reasonable doubt violates the Supreme Court's holding in *Apprendi* and *Ring*. The Supreme Court in *Apprendi* held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466,

476 (2000) (citation and quotation marks omitted); *see also Ring v. Arizona*, 536 U.S. 584, 602 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."). Johnson argues that because the insufficient-mitigating-circumstances finding is necessary for the death sentence, the prosecution should be required to prove that finding beyond reasonable doubt.

A "general assessment" of this argument, however, indicates that it is foreclosed by several circuit precedents. *Miller-El*, 537 U.S. at 336. In *Rowell v. Dretke*, for example, we noted the "important distinction between 'facts in aggravation of punishment and facts in mitigation.'" 398 F.3d 370, 378 (5th Cir. 2005) (quoting *Apprendi*, 530 U.S. at 490 n.16). The State needs to prove facts in aggravation beyond reasonable doubt. As to facts in mitigation, however, "no Supreme Court or Fifth Circuit authority requires the State to prove the absence of mitigating circumstances beyond a reasonable doubt." *Id.* at 378. In addition, "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Id.*; *see also Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007) ("We have specifically held that the Texas death penalty scheme did not violate either *Apprendi* or *Ring* by failing to require the state to prove beyond a reasonable doubt the absence of mitigating circumstances."); *Sprouse*, 748 F.3d at 623 (quoting *Scheanette v. Quarterman* and affirming the same holding).

Each of Johnson's arguments for the issuance of a certificate of appealability is foreclosed by on-point binding precedent that "fits like a glove." *Fowler v. United States*, 563 U.S. 668, 672 (2011). Accordingly, no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338; *Buck*, 580 U.S. at 115–16.

B

Next, we address the district court's denial of Johnson's motion to recuse. A district judge's refusal to recuse is reviewed for abuse of discretion. *Trevino*, 168 F.3d at 178. "Any . . . judge . . . shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Trevino*, 168 F.3d at 178 (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986)) (internal quotation marks omitted). A "reasonable person standard in the recusal context contemplates a 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'" *Id.* at 179 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)) (internal quotation marks omitted).

Here, Johnson alleges that Judge Ada Brown's decisions "would cause a reasonable person, knowing all the circumstances, to harbor doubts about the district court's impartiality." To support his allegation, Johnson points to two specific examples of her bias based upon her legal rulings.

First, Johnson contends that Judge Brown impermissibly "truncate[d]" the time his counsel had to investigate and prepare legal arguments. Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." Because Johnson's state habeas petition was denied on September 11, 2019, his 1-year period of limitation ended on September 11, 2020.

Shortly after the denial of his state habeas petition, Johnson's state habeas counsel filed a motion to the federal district court, requesting federal habeas counsel. On October 23, 2019, the court issued an order appointing

the present counsel to represent Johnson. In that same order, the court instructed Johnson to file his habeas petition by May 1, 2020. That deadline, Johnson alleges, contradicts 28 U.S.C. § 2244(d) because it was "four-and-a-half months earlier than the applicable deadline," and "[t]he language of the federal statute does not permit a federal court to shorten" that deadline. Based on Judge Brown's reluctance to extend his filing deadline to September 11, 2020 (*i.e.*, the full period allowed by the statute), Johnson contends that Judge Brown is biased.

But Johnson cited no governing legal authority recognizing the right to delay his briefing until the final day of AEDPA's one-year statute of limitations. To the contrary, it is firmly established that a district court has "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). In addition, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Accordingly, we hold that "a reasonable person" who knows "all the circumstances" would not "harbor doubts about the district court's impartiality" on this basis. *Trevino*, 168 F.3d at 178; *Buck*, 580 U.S. at 115–16.

Johnson also argues that the district court showed bias when it ordered his attorneys to explain why they should not be sanctioned for making arguments that have been "consistently rejected by the Fifth Circuit for decades." In response to that order, Johnson asserted that his attorneys "have a duty to raise all meritorious claims in [his] federal habeas petition even if the Supreme Court or [the Fifth Circuit] has yet to articulate a legal basis for those claims." (citing *United States v. Garza-De La Cruz*, 16 F.4th 1213, 1215 (5th Cir. 2021) ("But preserving one's rights just in case is not just reasonable. Failure to do so risks forfeiting the right altogether.")). Because Johnson believes that the court's order was unwarranted, he asserts that Judge

Brown's "threatening to sanction [his] attorneys for raising a meritorious claim suggest the district court harbored animus toward Johnson" and "intended to pressure Counsel to withdraw the second claim in Johnson's Petition."

In its order, the district court explained that even though it is generally acceptable for counsel to preserve claims, they nonetheless should acknowledge adverse on-point circuit precedent. In failing to do so, the district court noted that Johnson's counsel might be acting contrary to Rule 11(b)(2) of the Federal Rules of Civil Procedure, which requires counsel to certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Given the district court's explanation, we hold that the district court did not abuse its discretion in denying Johnson's motion to recuse. These do not debatably give rise to a claim for relief. *Buck*, 580 U.S. at 115–16.

\*       \*       \*

Because an "overview of the claims in the habeas petition and a general assessment of their merits" indicates that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," we DENY Johnson's application for a certificate of appealability. *Miller-El*, 537 U.S. at 336, 338; *Buck*, 580 U.S. at 115–16.

As to the motion for recusal, no reasonable person who knows "all the circumstances" would "harbor doubts about [the district court's] impartiality." *Trevino*, 168 F.3d at 178. Thus, we hold that the district court did not abuse its discretion in denying Johnson's motion to recuse. AFFIRMED.